UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL R. WARZEK,<br><br>    Plaintiff,<br><br>v.<br><br>O. ONYEJE, et al.,<br><br>    Defendants. | Case No.: 1:17-cv-01452-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 55] |

Plaintiff Michael R. Warzek is appearing pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed October 21, 2019.

**I.**

**RELEVANT HISTORY**

This action is proceeding against Defendants M. Conanan, O. Onyeje, and Charles E. Young for deliberate indifference to a serious medical need.

On August 2, 2018, Defendants filed an answer to the complaint.

On August 7, 2018, the Court issued the discovery and scheduling order.

On January 7, 2019, Defendants filed a motion for summary judgment for failure to exhaust the administrative remedies. Plaintiff filed an opposition on February 5, 2019, and Defendants filed a

1

reply and objections on February 11, 2019. On March 12, 2019, the undersigned issued Findings and Recommendations recommending that Defendants' motion for summary judgment be granted, and Plaintiff's claim relating to the denial of a medical chrono be dismissed, without prejudice, for failure to exhaust the administrative remedies. Plaintiff filed objections on April 15, 2019. On July 12, 2019, the Findings and Recommendations were adopted in full and Plaintiff's claim relating to the denial of a medical chrono was dismissed, without prejudice.

On March 8, 2019, Plaintiff filed a second amended complaint which was lodged by the Court. However, Plaintiff did not file a motion to amend the complaint until April 15, 2019, along with another copy of the proposed second amended complaint which was lodged. Defendants filed an opposition to Plaintiff's motion to amend on May 6, 2019. On May 24, 2019, the undersigned issued Findings and Recommendations recommending Plaintiff's motion to amend the complaint be denied. (ECF No. 46.) The Findings and Recommendations were adopted in full on August 23, 2019. (ECF No. 52.)

On October 22, 2019, Plaintiff filed a motion to add Defendant Dr. Renee Kanan. (ECF No. 57.) Defendants filed an opposition on October 31, 2019, and Plaintiff did not file a reply. Local Rule 230(l).

On November 14, 2019, the undersigned issued Findings and Recommendations recommending that Plaintiff's motion to amend the complaint be denied. (ECF No. 63.) The Findings and Recommendations were adopted in full on December 13, 2019. (ECF No. 67.)

As previously stated, on October 21, 2019, Defendants filed a motion for summary judgment. (ECF No. 55.) Plaintiff filed an opposition on January 15, 2020, and Defendants filed a reply and objections on January 23, 2020. (ECF Nos. 70, 71, 72.)

///
///
///
///
///

# II.

# LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

# III.

# DISCUSSION

### A. Summary of Plaintiff's Complaint

The events at issue in the instant action took place while Plaintiff was incarcerated at Pleasant Valley State Prison (PVSP).

Plaintiff's medical conditions include, but are not limited to, Acid Reflux Disease (GERD), Barrett's Esophagus, Diverticulitis and Hiatal hernia, all of which are gastrointestinal in nature, and can be controlled by a proper medical diet.

Plaintiff complained to his Primary Care Provided (PCP) Defendant M. Conanan that the excessive amounts of seasoning and grease used in the food was making him physically sick and causing him to choke and vomit. Defendant scheduled Plaintiff to see a registered dietitian.

On September 21, 2016, Plaintiff spoke with registered dietitian L. Hilton, who evaluated his medical condition and recommended a host of food items that the Plaintiff should avoid to alleviate his symptoms. This recommendation also included a list of health food items that the Plaintiff should eat to help with his medical condition.

On or about October-December 2016, Plaintiff informed Defendant M. Conanan about Hilton's recommendation that he be given a medical chrono to allow him more time to fully chew and eat his food in the kitchen, but the request was denied.

Plaintiff further informed Defendant M. Conanan that the greasy/spicy food was causing him severe burning in his chest and esophagus, and that the recommendation of the registered dietitian was not being adhered to. The dietitian recommended a host of food items the Plaintiff should avoid, and such food items were served on a regular basis as part of the regular diet served to the inmate population. Plaintiff submits that the food items recommended by the dietitian could only be provided to Plaintiff by way of a special therapeutic diet-which Defendant Conanan continues to deny.

On or about November 21, 2016, after numerous letters, requests and interviews, Plaintiff filed a formal medical appeal to the medical supervisors. In the appeal, Plaintiff mentioned that the failure to provide him the means to follow the recommendations of the registered dietitian was contributing to, and making his serious medical condition worse. Defendants Onyeje and Young continue to refuse Plaintiff a proper medical diet to alleviate the serious pain he is forced to endure. Plaintiff's medical issues require the Defendants to make it possible for him to follow the recommendations of the registered dietitian.

**B.** **Defendants' Objections to Plaintiff's Evidence**

Defendants object to two statements made under penalty of perjury in Plaintiff's memorandum of points and authorities in support of his opposition, eight statements set forth in Plaintiff's statement of undisputed facts, and two documents submitted in support of Plaintiff's declaration.

"[I]n motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." Doe v. Starbucks, Inc., No. SACV 08-cv-0582 AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009). "This is especially true when many of the "objections are boilerplate recitations of evidentiary principles or blanket objections" with limited or no analysis to the specific items of evidence. Id.; see also Stonefire Grill, Inc. v. FGF Brands, Inc., 987 F.Supp.2d 1023, 1033 (C.D. Cal. 2013) (stating "[t]he Court will not scrutinize each objection and give a full analysis of identical objections raised as to each fact").

The Court need not and will not address each of Defendant's objections individually and will only address the relevant objections if necessary to the resolution of the motion. However, the Court will address a couple evidentiary issues. First, the Court cannot consider as evidence Plaintiff's attempts to interpret his medical records, criteria, and statements regarding what he believes the appropriate treatment should have been. See Fed. R. Evid. 702. It is undisputed that Plaintiff has no medical training or education. (Pl.'s Dep. 11:11-19; 56:11-14; 85:10-13.) Therefore, to the extent Plaintiff expresses opinions not based on his first-hand knowledge of the facts of this case, but instead applies to specialized knowledge to which a lay person does not possess, the Court will not consider such testimony. United States v. Conn, 297 F.3d 548, 554 (7th Cir. 2002). Second, Defendants object to the meal sample reports which were likely disclosed by them during discovery as not authenticated. (Defs.' Obj. at p. 4, ECF No. 72.) An authentication objection in this circumstance is improper. Orr v. Bank of America, NT & SA, 285 F.3d 764, 777 n.20 (9th Cir. 2002). However, to the extent the meal sample reports contain statements by others, Defendants object as hearsay is sustained. To the extent the Court does not explicitly address an objection, that objection is overruled as moot because the Court did not rely upon the particular underlying evidence in deciding the instant motion for summary judgment.

    C.    **Statement of Undisputed Facts**

    1.    Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff is currently incarcerated at Valley State Prison (VSP). (Pl.'s Am. Compl., ECF No. 11.)

2. Plaintiff has acid reflux disease (GERD), Barrett's esophagus, diverticulitis, and a hiatal hernia and believes he needs a therapeutic diet because the food served at PVSP is too spicy. (Id.; Pl.'s Dep. 64:15-18; 65:3-18.)

3. Plaintiff has no medical training, no medical licenses, and is not a doctor. (Pl.'s Dep. 8:24-25; 9:20-25; 10:1-4.)

4. Dr. Conanan was one of the physician Plaintiff saw when he was housed at Pleasant Valley State Prison. Plaintiff characterized Dr. Conanan as the doctor he "relied on the most" and was the "most competent." Plaintiff also believed that Dr. Conanan was "more attentive than other physicians" he had seen. Dr. Conanan was "conscientious as much as she could be based on the environment that she was in and the rules she had to operate under." (Pl.'s Dep. 17:25; 18:10-22; 19:14-25; 20:1-8.)

5. CDCR and the California Correctional Health Care Services has an outpatient dietary policy. That policy provides four medical diets: the gluten free diet, the hepatic diet, the pre-renal diet, and renal diet. Plaintiff does not qualify for any of those diets. Under that policy, patients with certain food sensitivities, such as GERD and Barrett's esophagus are referred to a dietician for education and counseling. CDCR's standard "heart healthy" diet provides for additional calories so that inmates can pick and choose foods that do not aggravate their conditions. This diet also includes foods that would not aggravate the symptoms of GERD or Barrett's esophagus. (Conanan Decl. ¶ 5, Ex. A; Pl.'s Dep 60:9-25, 61:1-25, 64:1-25.)

6. Plaintiff's condition can be monitored with prescribed medications such as omeprazole, routine esophagogastroduodenoscopy (EGD) tests, and dietary counseling. Plaintiff is currently receiving medications for his condition. (Conanan Decl. ¶ 5.)

7. Plaintiff takes omeprazole, ranitide, and antacid chewables to manage his conditions. Plaintiff has no complaints about his medication regiment. (Pl.'s Resp. to Defs.' Interrog. No. 10; Pl.'s Dep. 66:15-25.)

8. Plaintiff had an endoscopy back on December 9, 2011, which indicated that he had Barrett's esophagus. Plaintiff was supposed to sit for another endoscopy in October 2013, but he signed a form indicating his refusal to sit for the procedure. (Id. ¶ 7.)

9. In October 2015, Dr. Chokatos saw Plaintiff and discussed Plaintiff's diagnosis of Barrett's esophagus. Plaintiff never had a repeat endoscopic procedure to monitor his condition. Dr. Chokatos ordered Plaintiff to receive omeprazole, which is used to treat stomach and esophagus problems by decreasing the amount of acid in the patient's stomach. (Id. ¶ 8.)

10. Plaintiff saw Dr. Conanan on January 11, 2016 in relation to his complaints about foot pain. Plaintiff and Dr. Conanan discussed Plaintiff's diagnosis of Barrett's esophagus and the fact that he had not had an EGD since December 2011. Dr. Conanan requested a EGD. (Id. ¶ 9; Feinberg Decl. ¶ 9.)

11. Plaintiff was scheduled to have the EGD on February 3, 2016. However, Plaintiff refused to sit for that test after being advised of the risks of refusing to accept medical treatment. (Conanan Decl. ¶ 10; Feinberg Decl. ¶ 11.)

12. On or about September 7, 2016, Plaintiff submitted a request for medical services in which he complained about the food being too spicy and asking to be able to receive a Kosher diet. (Conanan Decl. ¶ 11.)

13. Dr. Conanan saw Plaintiff about his request for services on September 9, 2016. Plaintiff was adherent to his medication regiment, but Plaintiff wanted Dr. Conanan to approve him to receive a Kosher diet. Dr. Conanan did not have the authority to order a Kosher diet and referred him to see PVSP's dietician. Dr. Conanan also has no authority over food preparation. (Id. ¶ 12; Pl.'s Dep. 57:19-23; Feinberg Decl. ¶ 15.)

14. On or about September 21, 2016, Plaintiff had a consultation with registered dietician Ladon Hilton. Plaintiff was given educational materials about dietary choices for patients with GERD and Barrett's esophagus and provided him with counseling on the foods that he should eat from the prison's menu in order to avoid aggravating his symptoms. Plaintiff states that these foods may be available to him, but the kitchen staff uses too much spice in preparing them. (Hilton Decl. ¶ 5; Pl.'s Dep. 53:10-25; 54:1-25; 56; Feinberg Decl. ¶ 16.)

15. Dr. Conanan saw Plaintiff again on October 13, 2016 for a follow-up with Plaintiff. Plaintiff was adherent on his medications with no symptoms. Plaintiff again complained that the food in the cafeteria was too spicy. Dr. Conanan provided Plaintiff educational materials and counseling

7

about foods he should eat that are part of the prison's menu. Dr. Conanan also discussed Plaintiff's history of Barrett's esophagus and ordered a repeat EGD test. (Conanan Decl. ¶ 13; Pl.'s Dep. 70:10-25; 71:1-17; 72, Feinberg Decl. ¶ 17.)

16. Plaintiff submitted an inmate grievance, in which he requested a Kosher diet as an alternative to the spicy foods he was eating at the prison's cafeteria. Dr. Conanan interviewed Plaintiff on November 29, 2016. (Conanan Decl. ¶ 14.)

17. Plaintiff appealed the first level decision to deny him any relief. Defendants Onyeje and Young participated in the second-level's decision to deny Plaintiff's request for a Kosher diet. Neither Onyeje nor Young provided Plaintiff with any medical treatment. (Young Decl. ¶¶ 2-5; Onyeje Decl. ¶ 5; Pl.'s Dep. 20-23.)

18. Plaintiff saw Dr. Conanan on December 13, 2016, for a consultation regarding Barrett's esophagus. Plaintiff was scheduled to have an EGD on December 6, 2016; however, he was not prepped for the procedure and therefore did not have the procedure. (Conanan Decl. ¶ 15; Feinberg Decl. ¶ 17.)

19. Plaintiff saw Dr. Conanan for a follow-up appointment on December 20, 2016. Plaintiff did not report any symptoms and Dr. Conanan rescheduled Plaintiff for his EGD. (Conanan Decl. ¶ 16; Feinberg Decl. ¶ 20.)

20. Dr. Conanan saw Plaintiff again on July 27, 2017. Records indicated that Plaintiff had an EGD on April 5, 2017, and that the EGD indicated that Plaintiff no longer had Barrett's esophagus. Dr. Conanan continued Plaintiff on omeprazole. (Conanan Decl. ¶ 17.)

21. Plaintiff was seen again by Dr. De La Sierra on October 5, 2017. Dr. De La Sierra reported that Plaintiff was stable and asymptomatic. Plaintiff continued to take his omeprazole, reduced his coffee intake and consumption of food that aggravated his heartburn. (Conanan Decl. ¶ 19.)

22. Plaintiff claims $18,000 in damages due to out of pocket expenses from "providing himself food that he is/was able to eat from packages and the prison's commissary." Plaintiff calculated this amount by adding up everything that he purchased at the canteen from 2007 until May 2018. (Pl.'s Resp. to Defs.' Interrog. No. 13 (ECF No. 55-8); Pl.'s Dep. 88:10-25; 87:2-10.)

8

23. On or about May 11, 2016, Plaintiff purchased 12 cans of Pepsi from the commissary and drank some of them. (Pl.'s Dep. 88:5-25; 89:1-4.)

24. On that same date, Plaintiff ordered ten Hershey's chocolate bars with almonds and ate some of them. (Pl.'s Dep. 89:6-10.)

25. On June 14, 2016, Plaintiff ordered 2 units of barbecue sauce, buffalo wing flavored potato chips and ten Hershey bars with almonds, which he ate. (Pl.'s Dep. 89:16-25.)

26. On October 17, 2017, Plaintiff ordered thirteen cans of Pepsi and drank some of them. He also ordered SF brand barbecue sauce and ate them. Plaintiff also ordered and ate Hershey bars with almonds. (Pl.'s Dep. 90:4-15.)

27. On May 24, 2018, Plaintiff placed another order with the commissary. This time he ordered six cans of Pepsi, two cans of Sierra Mist, which he drank, eight Hershey bars with almonds, which he ate, six units of barbecue flavored chips, which he ate, and ten units of chili flavored ramen, which he ate. (Pl.'s Dep. 90:16-25; 91:1-7.)

28. Plaintiff either ate the majority of foods he ordered or traded it for other food. (Pl.'s Dep. 91:8-13.)

29. Plaintiff was given educational materials that instructed him on a list of foods to avoid, which included foods like chocolate, peppermint, spearmint, caffeinated beverage like coffee and sodas, any foods with pepper in it, milk, yogurt, cheeses, fried meats, bacon, pepperoni, salami, hot dogs, French fries, donuts, nuts, and nut butters. (Pl.'s Dep. 26:9-25; 27:1-25; 28:1-10.)

30. The foods Plaintiff ordered through the Prison's commissary are included in the foods not recommended by the registered dietician at PVSP. These are foods that the dietician would not recommend to Plaintiff if Plaintiff wanted to avoid the symptoms of GERD. (Hilton Decl. ¶ 6.)

**C.  Analysis**

Defendants argue that they chose a medically reasonable course of treatment for Plaintiff, and their acts or omissions were not the proximate cause of his harm. Defendants further argue that they are entitled to qualified immunity.

In opposition, Plaintiff argues that GERD and Barrett's are not food sensitives but rather medical conditions. (Pl. Opp'n at p. 5.) Plaintiff also contends that Defendants ignored registered

dietician Hilton's recommendations. (Id.) Plaintiff also contends that his medical records were unlawfully manipulated to reflect that a therapeutic diet was not medically necessary. Plaintiff further argues that the medical records are contradictory in that one document reflects that Plaintiff is in need of a Kosher diet but is not Jewish and the other document reflects no medical indication for a Kosher diet. (Pl.'s Opp'n, Exs. C & D.)

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Isolated occurrences of neglect do not rise to the level of an Eighth Amendment violation. O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (quotation marks omitted); Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Defendants submit the expert opinion of Doctor Bennett Feinberg,[1] who declares, in pertinent part, the following:

> In my medical opinion, Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs by denying his request for a medical diet for his gastroesophageal reflux

---

[1] Dr. Feinberg is Board Certified in Internal Medicine and has been licensed to practice medicine by the State of California since 1997. (Feinberg Decl. ¶ 2.) Dr. Feinberg is currently employed by the California Correctional Health Care Services (CCHC) and serves as the Chief Medical Consultant for the CCHCS Office of Legal Affairs. (Id. ¶ 3.) He previously served as a full-time primary care physician in two California prisons from January 2010 to January 2017. (Id. ¶ 4.) Before CCHCS, Dr. Feinberg served as a physician team leader and staff physician at Kaiser Permanente for twelve years. (Id.)

10

disease (GERD) is not supported by the medical record. Defendants were duly responsive to Plaintiff's medical conditions, and provided treatment for his GERD that comports with current medical standards of care. Plaintiff was provided with appropriate medications for GERD, and provided with appropriate EGD monitoring for Barret's esophagus, the potentially serious complication of poorly controlled GERD, limited only by Plaintiff's repeated refusals despite Defendants' counseling of Plaintiff regarding the risks of his refusals. Plaintiff was also education on appropriate lifestyle modifications for GERD, including losing weight, as Plaintiff was consistently ranging from obese to morbidly obese. Plaintiff was also advised not to lay down for several hours after eating. Regarding dietary recommendations, Plaintiff was advised that a kosher diet is not something that can be medically prescribed and is instead arranged by religious services at the institutions. Nor is a kosher diet any more appropriate for GERD than the standard heart healthy diet given to all inmates. That standard heart healthy diet provides many hundreds of calories per day beyond what is needed by the average adult precisely to allow for individuals to choose not to eat particular items that they do not like or find gastrointestinally upsetting. Plaintiff was given specific recommendations, by his PCP Dr. Conanan as well as by registered dietician Hilton, for which foods not to eat. He was advised not to eat spicy foods, yet in deposition testimony admitted to ordering from the canteen and personally consuming chili flavored ramen soup and barbeque flavored chips. He was advised not to consume chocolate, yet in deposition testimony admitted to ordering from the canteen and personally consuming numerous chocolate bars. Despite all of this, Plaintiff's GERD appears to have improved under Defendant's care, and Plaintiff suffered no harm from not receiving a medical diet for GERD. Plaintiff's repeat EGD from April 5, 2017 showed that his Barrett's esophagus had resolved, and at Plaintiff's most recent chronic care appointment earlier this year, his current PCP recommended decreasing his prescribed GERD medication omeprazole.

(Feinberg Decl. ¶ 24.)

It is undisputed that CDCR and the California Correctional Health Care Services (CCHCS) has an outpatient dietary policy. That policy provides for four specialty medical diets: the gluten free diet, the pre-renal diet, the hepatic diet, and the renal diet. However, Plaintiff does not qualify for any of those diets. Pursuant to the policy, an inmate's primary care physician can refer inmates with certain food sensitivities, such as GERD or Barrett's esophagus, to a registered dietician for education and counseling. CDCR has a "heart healthy" diet for inmates, which provides them with additional calories so that inmates can pick and choose foods that do not aggravate any food sensitivities the inmates may have. This diet also includes food that would not aggravate the symptoms of GERD or Barrett's esophagus.

The undisputed evidence demonstrates that Defendant Dr. Conanan was not deliberately indifferent to Plaintiff's serious medical needs. Rather, Dr. Conanan continuously evaluated and

11

treated Plaintiff for his condition. More specifically, Dr. Conanan submitted multiple requests for Plaintiff to sit for EGD testing. However, Plaintiff refused to sit for the recommended EGD testing on several different occasions which effectively prevented Dr. Conanan from monitoring the progress, if any, of his Barrett's esophagus. Furthermore, Dr. Conanan continued Plaintiff's medication regimen, which included omeprazole, a medication which treated Plaintiff's gastrointestinal conditions. Dr. Conanan also referred Plaintiff to registered dietician Hilton. Dietician L. Hilton declares, in pertinent part, the following:

> I am familiar with GERD, and from my experience as a dietician, I know that GERD can occur when stomach acid flows back into the patient's esophagus. Common signs and symptoms of GERD can include heartburn after eating, chest pain, difficulty swallowing, and vomiting. Factors that can aggravate these symptoms include eating certain food, such as fatty or fried foods, or spicy foods. Indeed, patients should avoid caffeine, chocolate, citrus fruits and juices, carbonated beverages, mints, tomato products, fried and greasy foods, spicy foods, garlic, and onions. However, in my experience, GERD can be managed through medication and dietary education. Patients can be properly educated on the types of food that will mitigate these symptoms, and these foods are regularly provided and available at all CDCR institutions. With proper medication and dietary education, the symptoms can be avoided.
>
> My consultation with [Plaintiff] occurred on September 21, 2016. At that time, [Plaintiff] told me that he having difficulty eating spicy food. He stated that he was a Messianic Jew who, because of religious reasons, needed to have a Kosher diet. I advised him that providing diets based on religious exercise is beyond my scope of practice. When I told [Plaintiff] that I could not give him the Kosher diet, he wanted to leave the appointment; however, I persuaded him to receive dietary instruction on how to avoid aggravating his gastrointestinal conditions. At that time, I told him to avoid foods that had mint or chocolate, avoid coffee, limit fatty foods for dinner, and to stay up for at least three hours after the last meal of the day.
> …
>
> I have reviewed documents from [Plaintiff's] inmate commissary receipts. These receipts record food orders made by inmates at Pleasant Valley State Prison. It is the regular practice of Pleasant Valley State Prison to prepare these receipts when an inmate places food orders; these records were prepared at or near the time the orders were placed by a person with knowledge of the transactions described in the receipts; and the receipts were prepared in the course of the regular practice of preparing receipts of these transactions. A true and correct copy of [Plaintiff's] inmate commissary receipts from October 9, 2012 until May 23, 2018 is attached as Exhibit D and Bates-stamped exhibits D00002-93. [Plaintiff's] inmate receipt from May 11, 2016, for example, indicates that he ordered 12 cans of Pepsi, a caffeinated beverage, ten Hershey's chocolate bars with almonds, and chili ramen with beef. The following month, on June 14, 2016, [Plaintiff] ordered another 12 cans of Pepsi, another 10 bars of Hershey's chocolate with almonds, barbecue sauce, and buffalo wing flavored potato chips. (ExD000042.) In December 2018, [Plaintiff] ordered "spice time bacon bits" and ground cinnamon. (ExD000013.) [O]n September 13, 2018, he ordered hickory barbeque flavored

12

potato chips, chocolate wafer cookies, chocolate brownie cookies, and a macadamia nut cookie. (ExD000016-17.) In January 2019, he ordered 4 cans of wild cherry Pepsi, hot crunchy cheese curls, lemon pepper spice time seasoning, S.F. Barbecue Sauce, Jebediah's brand barbecue chips, and "Spice Time" brand minced onion. (ExD00002-3.) On occasion, [Plaintiff] has ordered Sriracha, spicy flavored beans, beef flavored salami, and jalapeno peppers. (ExD000055.) Based on my experience providing dietary consultation to inmate patients with GERD, these foods would more than likely aggravate the symptoms of GERD [Plaintiff] told me he was experiencing when I provided him with dietary consultation. I would not recommend that [Plaintiff] continue to consume these foods if he wanted to avoid the symptoms of GERD.

(Hilton Decl. ¶¶ 4, 6.)

Based on the evidence presented, there is no basis to find that Dr. Conanan ignored Plaintiff's condition or was deliberately indifferent. By extension, Defendants Onyeje and Young were also not deliberately indifferent. Liability is generally not imposed on a medical officer who only acted to review and deny an inmate appeal. See, e.g., Vasquez v. Tate, No. 1:10-cv-01876-JLT (PC), 2013 WL 1790143, at *8 (E.D. Cal. Apr. 26, 2013), citing Koch v. Neubarth, No. 1:09-cv-00116-SMS (PC), 2009 WL 4019616, at *5 (E.D. Cal. 2009). However, "a medically-trained individual who is made aware of serious medical needs through reviewing a prisoner's appeal may be liable for failure to treat those needs." Rapalo v. Lopez, No. 11-cv-01695, 2017 WL 9311822, at *17 (E.D. Cal. Mar. 9, 2017); see also Pogue v. Igbinosa, No. 1:07-cv-01577-GMS, 2012 WL 603230, at *9 (E.D. Cal. Feb. 23, 2012) ("emerging consensus, therefore, is that a medically-trained official who reviews and denies an appeal is liable under the Eighth Amendment when a plaintiff can show that the official knew, at least in part, from reading the appeal that the plaintiff had a serious medical issue and nevertheless chose not to offer treatment"). It is undisputed that Defendants Onyeje or Young did not personally examine or treat Plaintiff. Rather, Defendant Onyeje's sole role involved approving Dr. Conanan's requests for EGD and review of the second-level appeal. Defendant Young's sole role was to review the second-level appeal. In denying Plaintiff's appeal at the second level, Defendant Onyeje reviewed Plaintiff's medical record and treatment provided by Dr. Conanan and determined that there was no medical need to provide any further relief as Dr. Conanan's actions were medically appropriate and within CDCR policy. (Onyeje Decl. ¶ 5.) In addition, Defendant Young (who is not a medical doctor) reviewed the first level review conducted by Dr. Conanan and Dr. Ola and determined their actions were within

13

policy as Plaintiff was referred to a dietician and there was no diet for his condition. (Young Decl. ¶ 5.)

With regard to Plaintiff's contention that his medical records are contradictory, Plaintiff's claim is without merit. The progress note dated September 12, 2016, reflects that Plaintiff wished to see a dietician to be changed to a Kosher diet, but it was noted that he was not Jewish and was not a candidate for a Kosher diet. (Pl. Opp'n, Ex. C.) The progress note dated October 13, 2016, reflects Plaintiff was seen by a dietician and referred to medical to have a prescription for a Kosher diet. (Pl. Opp'n, Ex. D.) However, Plaintiff was advised by Dietician Hilton that he could not provide a Kosher diet. (Hilton Decl. ¶ 5.) In addition, it was determined by medical staff that the heart healthy diet as well as the vegetarian diet provided adequate food without causing GERD, and there was no medical indication for a Kosher diet. (Pl. Opp'n, Ex. D.)

Plaintiff's contention that GERD and Barrett's are not food sensitives but rather medical conditions is a mere disagreement with a medical diagnosis which does not give rise to a claim under the Eighth Amendment. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Furthermore, although Plaintiff faults medical professionals for failing to prescribe him a proper medical diet that does not contain food that irritates his GERD, it is undisputed that Plaintiff himself purchases and voluntarily consumes foods that are known to aggravate his GERD. Moreover, although Plaintiff claims falsification of his medical records, he offers no evidence to support his contention, and Plaintiff does not have an independent right to an accurate prison record. See Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1987); Crisp v. Wasco State Prison, No. 13-cv-01899-SKO (PC), 2015 WL 3486950, at *5 (E.D. Cal. June 2, 2015) ("While falsification or alteration of medical records may supply facts relevant to an Eighth Amendment claim of deliberate indifference to serious medical needs, Plaintiff has no independent claim for relief under the Eighth Amendment for 'denial of accurate medical records.'"); Bartholomew v. Traquina, No. 10-cv-03145 EFB P, 2011 WL 4085479, at *3 (E.D. Cal. Sept. 13, 2011) ("The falsification of records itself is insufficient to state a cognizable claim of deliberate indifference to plaintiff's serious medical needs.").

Based on the foregoing, there is no evidence from which a trier of fact could conclude that any Defendant knew, based on Plaintiff's medical condition, that the heart healthy diet with self-abstention

education would pose a substantial risk of serious harm to Plaintiff, but disregarded that risk anyway. Accordingly, Defendants' motion for summary judgment should be granted.

## IV.
## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and
2. Judgment be entered in favor of Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __April 13, 2020__

UNITED STATES MAGISTRATE JUDGE